## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| JOSEPH R. TOMELLERI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No. 2:14-CV-02113-JAR** |
| ) | |
| MEDL MOBILE, INC., et al., ) | |
| ) | |
| Defendants. ) | |

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff Joseph Tomelleri brings this action under 17 U.S.C. § 101 *et seq.*, alleging claims for direct, vicarious, and contributory copyright infringement against Defendant MEDL Mobile, Inc ("MEDL"). On May 7, 2014, MEDL filed a Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9). Plaintiff then moved for jurisdictional discovery, and the Court granted that motion. The parties completed jurisdictional discovery in October 2014.

The case now comes before the Court on MEDL's Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 36). The motion is fully briefed and the Court is prepared to rule. For the reasons stated in detail below, the Court lacks both general and specific personal jurisdiction over MEDL. MEDL's contacts with Kansas are not so substantial and continuous as to render MEDL essentially at home in this state. Further, though MEDL has purposefully directed activities at the state of Kansas, Plaintiff's cause of action does not arise out of those forum-related activities. The Court grants MEDL's motion to dismiss.

I.      **Standard**

Plaintiff bears the burden of establishing personal jurisdiction over MEDL.[1]  In the absence of an evidentiary hearing, as in this case, the plaintiff must make only a prima facie showing of jurisdiction to defeat a motion to dismiss.[2]  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[3]  Allegations in a complaint are accepted as true if they are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by submitted affidavits.[4]  When a defendant has produced evidence to support a challenge to personal jurisdiction, a plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.[5]  The court resolves all factual disputes in favor of the plaintiff.[6]  Conflicting affidavits are also resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[7]

## III.   Background

The Court takes the following facts from Plaintiff's Complaint and the affidavits and

---

[1] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[2] *AST Sports Sci., Inc. v. CLF Distrib. Ltd.,* 514 F.3d 1054, 1056–57 (10th Cir. 2008); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[3] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) (citing *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.,* 488 F.3d 1282, 1286 (10th Cir. 2007)); *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[4] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989); *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985).

[5] *Pytlik*, 887 F.2d at 1376.

[6] *Dudnikov*, 514 F.3d at 1070.

[7] *Behagen*, 744 F.2d at 733.

exhibits submitted by both parties.  Plaintiff Joseph Tomelleri, a Kansas resident, is an illustrator of various North American fish species.  He has registered copyrights on forty-one fish illustrations, which he makes available for reproduction by purchase and download from his website, www.americanfishes.com.

Defendant MEDL Mobile, Inc., is a California corporation that develops software applications ("apps") for smart phones and other mobile devices.  Its only office is in Fountain Valley, California; it does not have a local agent or bank account or own any property in the state of Kansas; and its employees have never traveled to Kansas for business purposes.  MEDL does, however, maintain a website which is accessible to users worldwide. That website presents information about MEDL and its products and contains hyperlinks to the online stores of third-party app providers, like iTunes and Google Play, where MEDL's apps are offered for sale.

In late 2009, Connecticut resident Jason Siniscalchi, a co-defendant in this case, approached MEDL with an idea for an app that would catalogue information about various fish species located in the United States.  MEDL agreed to develop and launch the app with Mr. Siniscalchi's help.  The result of this partnership was "FishID," a mobile app billed as "a flexible tackle box of tools for identifying any catch, finding fishing spots, [and] reading up on local regulations."[8]  FishID provides detailed profiles of each fish species as well as range maps allowing users to identify species that can be found in particular locations, including bodies of water within the state of Kansas.  The app also links to each state's fishing regulations.

Mr. Siniscalchi supplied MEDL with the pictures used in the app's fish species profiles. Plaintiff alleges that some of those pictures are direct copies of Plaintiff's copyrighted fish

---

[8]Doc. 1 ¶ 14; Doc. 42-6.

illustrations and that Mr. Siniscalchi and MEDL incorporated those illustrations into the app without Plaintiff's permission, thus violating Plaintiff's copyrights.  According to the affidavit of MEDL's CEO Andrew Maltin, Mr. Siniscalchi indicated to MEDL during the app's development phase that the fish species illustrations came "almost exclusively from government websites (i.e., the public domain)."[9]  Thus, Mr. Maltin declares, MEDL was unaware during the development and launch of the FishID app that any of the pictures supplied by Mr. Siniscalchi was a copyrighted work.

MEDL became aware of "potential copyright issues" in February 2012, when Plaintiff's attorney sent a letter informing MEDL that some pictures displayed on its website and featured in its FishID app infringed on Plaintiff's copyrights.  The letter demanded that MEDL cease and desist from further distribution of the cited pictures.  MEDL did not respond to the letter, but Mr. Maltin declares that the company undertook to "fix this issue and remove the alleged infringing FishID app from the iTunes store."[10]  That effort proved unsuccessful: Mr. Maltin states that Apple, "for some reason," rejected a new build of the FishID app which MEDL had created to replace the former version, and the app containing allegedly infringing illustrations thus remained available for purchase and download from iTunes.[11]  Mr. Maltin explains that after MEDL attempted to upload the new build, "other projects took precedence, and MEDL moved onto those other projects.  MEDL simply lost track of this issue and w[as] not aware that the new

---

[9]Doc. 36-1 ¶ 12.

[10]*Id.* ¶ 14.  MEDL did not offer the app for sale through any app provider other than iTunes.

[11]Doc. 36 at 11; Doc. 36-1 ¶ 14.

build was not properly uploaded until MEDL was served with the complaint" in this case.[12]

Plaintiff does not allege that the FishID app has ever been purchased or used by a person located in Kansas.  He argues, however, that specific jurisdiction exists in this case based on MEDL's efforts in developing and marketing the FishID app.  In addition, Plaintiff submits a sealed exhibit tabulating the number of times MEDL's "other products" have been installed on mobile devices in each state.  That spreadsheet shows that users in Kansas have installed MEDL's apps on at least 6,663 occasions—a showing, Plaintiff contends, sufficient to establish general personal jurisdiction over MEDL.  MEDL argues that neither specific nor general jurisdiction exists here and requests the Court to dismiss Plaintiff's claims for lack of personal jurisdiction or, in the alternative, to transfer the case to the Central District of California.

## III.   Discussion

"Before a federal court can exercise personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant, and (2) whether the exercise of jurisdiction comports with due process."[13]  Because the Copyright Act, under which Plaintiff brings this action, does not provide for nationwide service of process, Plaintiff must show that MEDL is amenable to service of process under Kansas' long-arm statute, K.S.A. 60-308(b).[14]  That long-arm statute is coextensive with the constitutional limitations imposed by the due

---

[12]Doc. 36-1 ¶ 14.

[13]*Rainy Day Books, Inc. v. Rainy Day Books & Café, LLC*, 186 F. Supp. 2d 1158, 1160–61 (D. Kan. 2002) (citing *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).

[14]Fed. R. Civ. P. 4(k)(1)(A).

process clause.[15]  Thus, the long-arm statute inquiry and the due process inquiry merge, and the determinative question becomes whether the exercise of jurisdiction in this case comports with due process.[16]

"The Due Process Clause secures an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"[17]  A court may therefore exercise personal jurisdiction over a nonresident defendant only if the defendant has "minimum contacts" with the forum state.[18]  "Such contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities."[19]

Here, as noted, Plaintiff contends the Court may exercise both general and specific jurisdiction over MEDL.

### A.   General Jurisdiction

General jurisdiction permits a court to exercise power over a corporate defendant in "instances in which the [defendant's] continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."[20]  Prior to the Supreme Court's recent decisions

---

[15]*Volt Delta Resources, Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987).

[16]*See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998).

[17]*Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)).

[18]*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

[19]*Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[20]*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

in *Goodyear Dunlop Tires Operations, S.A. v. Brown*[21] and *Daimler AG v. Bauman*,[22] Tenth

Circuit case law suggested that general jurisdiction exists so long as a defendant's forum-related

contacts are "continuous and systematic."[23]  In *Goodyear* and *Daimler AG*, however, the

Supreme Court clarified that even "substantial, continuous, and systematic" forum-related

contacts are insufficient to confer general jurisdiction; rather, the defendant's contacts with the

forum must be "*so* 'continuous and systematic' as to render [it] *essentially at home* in the forum

State."[24]  For a corporate defendant, paradigmatic bases for the exercise of general jurisdiction

include the defendant's place of incorporation and principal place of business.[25]  General

jurisdiction in a forum other than the defendant's place of incorporation or principal place of

business will exist only in "exceptional case[s]" where the defendant's operations in the forum

are "so substantial and of such a nature as to render the corporation at home in that State."[26]

    The Tenth Circuit has established four factors to consider in deciding whether a

corporation is "at home" in the forum state:

---

[21]131 S. Ct. 2846 (2011).

[22]134 S. Ct. 746 (2014).

[23]*See, e.g.*, *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) ("General jurisdiction is based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state." (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006) ("The minimum contacts standard is also satisfied, and a court may maintain general jurisdiction over a nonresident defendant, based on the defendant's 'continuous and systematic' general business contacts with the forum state." (citing *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 415 (1984))); *see also Shrader*, 633 F.3d at 1243 ("A web site will subject a defendant to general personal jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum." (citation omitted)).

[24]*Daimler AG*, 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851) (emphasis added); *see also Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) (quoting *Goodyear*, 131 S. Ct. at 2851).

[25]*Id.* at 760 (quoting *Goodyear*, 131 S. Ct. at 2853–54).

[26]*Id.* at 761 n.19.

7

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.[27]

Here, it is uncontroverted that MEDL does not have an office or agent in Kansas, has never sent an agent into the state for business purposes, and does not directly advertise or maintain bank accounts within the state.  The first three factors therefore weigh against the Court's exercise of general jurisdiction over MEDL.  Nevertheless, Plaintiff contends that the volume of business MEDL has conducted with Kansas residents warrants the Court's exercise of general jurisdiction.    Plaintiff first refers the Court to a spreadsheet he obtained through jurisdictional discovery, filed under seal as Exhibit F, showing that users in Kansas have installed MEDL's apps onto mobile devices on at least 6,663 occasions.[28]  In Plaintiff's view, these "several thousand transactions" are substantial and continuous enough to confer general jurisdiction over MEDL.  The Court disagrees.  While thousands of sales to users in a particular state might in some circumstances suffice to establish general jurisdiction, the volume of a corporate defendant's forum-related transactions must be analyzed in the context of its sales operations as a whole.[29]  For a global corporation with a high transaction volume, for example, several thousand forum-related transactions might represent only a small fraction of its overall business,

---

[27]*Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 95 (10th Cir. 2012) (quoting *Kuenzle v. HTM Sport- Und Freizeitgerate AG*, 102 F.3d 453, 457 (10th Cir. 1996)).

[28]Doc. 48-1 at 185.

[29]*See Daimler AG*, 134 S. Ct. at 762 n.20 ("[T]he general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts.  General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." (internal quotation marks and citation omitted)).

belying the argument that the defendant is "essentially at home" in the forum state.[30]  That appears to be the case here: Exhibit F shows that MEDL's 6,663 Kansas-based app installations account for only 1.2% of app installations in the United States and .5% of installations worldwide.[31]  Such modest sales activity has been held insufficient to establish continuous and systematic contacts,[32] and does not make this the "exceptional case" where MEDL is at home in Kansas despite being domiciled and maintaining its principal place of business elsewhere.[33]

Plaintiff also asserts that MEDL does more business in Kansas than Exhibit F indicates because MEDL "actively partners with other Kansas companies that are registered to do business in the State of Kansas."[34]  In support of this position, Plaintiff cites an investor presentation in

---

[30]*See id.* ("A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." (citation omitted)).

[31]*See Doc.* 48-1 at 164–216.  Plaintiff contends Exhibit F shows that 7.5% of worldwide app installations occurred in Kansas, while MEDL argues that Kansas installations account for only .005% of global downloads. Both percentages are incorrect.  MEDL's mistake appears to result from simple failure to accurately express the decimal fraction of Kansas installations to global installations (.005) in percentage format.  Plaintiff, on the other hand, miscalculates the number of installations that occurred altogether.  He appears to mistake a number displayed at the end of the spreadsheet—88,171—for a total of the number of app installations that occurred worldwide.  *Id.* at 216.  It is unclear what function that number serves, as it is unaccompanied by the descriptive information attached to all other entries in the spreadsheet.  But it is clear that the number does not represent the total number of app installations that actually occurred: manual summation of the installation figures listed in the spreadsheet shows that the number of worldwide app installations exceeded 1.27 million.  *See id.* at 164-216.  The 6,663 app installations in Kansas, therefore, represent only about .5% of app installations worldwide.  Moreover, Plaintiff does not specify how many of these 6,663 app installations in Kansas were of the FishID app, and how many were for other apps developed by MEDL.

[32]*See Macedo v. Green Valley Chem. Corp.*, No. 11-2666 EFM, 2013 WL 1776666, at *5 (D. Kan. Apr. 25, 2013) (finding a lack of general jurisdiction in part because the defendant's Kansas sales, at less than three percent of the defendant's overall sales, did not represent a significant volume of business); *Hydro Eng'g v. Landa, Inc.*, 231 F. Supp. 2d 1130, 1133–34 (D. Utah 2002) (declining to exercise general jurisdiction where the nonresident defendant's sales to Utah customers amounted to 1.85% of the defendant's national sales); *L.H. Carbide Corp. v. Piece Maker Co.*, 852 F. Supp. 1425, 1435–36 (N.D. Ind. 1994) (refusing to exercise general jurisdiction where sales in the forum state accounted for eight percent of the defendant's total nationwide sales).

[33]*See Daimler AG*, 134 S. Ct. at 761 n.19.

[34]Doc. 42 at 7.

which MEDL states that it has licensed its technology and provided services to companies like Taco Bell and The New York Times; Plaintiff then submits documents from the Kansas Business Center's website ostensibly showing that those companies are registered to do business in Kansas.[35]  But this evidence does not demonstrate how MEDL's contacts with its so-called "partner" companies touch on the state of Kansas at all, much less that those contacts are so extensive as to render MEDL at home in the forum.  MEDL does not itself do business in Kansas by merely providing services for corporations registered to do business in the state.[36]  Moreover, even if the Court were to impute the contacts of its "partner" companies to MEDL in this case,[37] Plaintiff makes no showing that those companies are themselves subject to general personal jurisdiction in Kansas.

The Court finds that all four general-jurisdiction factors weigh against exercising general jurisdiction in this case.  Because Plaintiff has not met his burden of demonstrating that MEDL's contacts with Kansas are "so 'continuous and systematic' as to render [it] essentially at home in" this state,[38] the Court may not exercise general personal jurisdiction over MEDL.

### B.    Specific Jurisdiction

---

[35]Doc. 42-5 at 13; Doc. 42-9.

[36]*See, e.g.*, *Schwarzeneggar v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (finding general jurisdiction lacking even though the defendant regularly retained the services of a forum-based marketing company and hired a sales training company incorporated in the forum for consulting services); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (declining to exercise general jurisdiction over a defendant which had license agreements with several forum-based companies "because engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders.").

[37]*See, e.g.*, *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 920 (9th Cir. 2011) (finding that the contacts of a subsidiary may be attributed to its foreign parent company under certain circumstances).

[38]*See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations., S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

Alternatively, Plaintiff argues that the Court has specific personal jurisdiction over MEDL based on its efforts in developing and marketing the FishID app.  To establish specific jurisdiction, Plaintiff must show (1) that MEDL purposefully directed activities at the state of Kansas and (2) that Plaintiff's injuries arise out of MEDL's forum-related activities.[39]  If Plaintiff succeeds in satisfying both of these prongs, the burden then shifts to MEDL to show that the exercise of jurisdiction would be unreasonable.[40]

1.    Purposeful Direction

Plaintiff's briefing suggests three potential bases for satisfying the purposeful-direction prong: (a) MEDL's commission of an intentional tort against Plaintiff, (b) MEDL's operation of a website which actively marketed the FishID app to Kansas residents, and (c) MEDL's development of a mobile app with Kansas-specific features.  The Court will address each of these bases separately.

a.   Commission of an Intentional Tort

Plaintiff first contends that MEDL purposefully directed activities at Kansas by knowingly infringing Plaintiff's copyrights, thus committing an intentional tort against a Kansas resident.  In the intentional tort context, courts in the Tenth Circuit apply the "effects test" set forth in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*[41]  That test, derived from the Supreme Court's decision in *Calder v. Jones*,[42] allows the plaintiff to establish purposeful direction by

---

[39]*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

[40]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008); *Schwarzenegger*, 374 F.3d at 802; *Mellon Bank (East) PFSF, Nat'l Assoc. v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

[41]514 F.3d 1063 (10th Cir. 2008).

[42]465 U.S. 783, 789–90 (1984).

showing that the defendant took (a) an intentional action, that was (b) expressly aimed at the forum state, with (c) knowledge that the brunt of the injury would be felt in the forum state.[43]

The Court notes at the outset a material distinction between the tort of copyright infringement and the intentional torts to which the *Calder* "effects test" has traditionally applied. To prove copyright infringement, Plaintiff need not show that MEDL intended to infringe a copyright, but only that MEDL in fact copied a protected work.[44]  Copyright infringement, in other words, is a strict-liability tort, not an intentional tort.[45]  As such, it is difficult to see how unintentional copyright infringement could satisfy the third prong of *Calder*'s effects test: a defendant can scarcely be deemed to have acted "with knowledge that the brunt of the injury would be felt in the forum state" where the defendant did not intend to cause injury in the forum state—or anywhere else—at all.[46]  Indeed, courts in the Tenth Circuit and a majority of those elsewhere have found the effects test satisfied only where allegations suggest that the defendant intended to cause injury, or at least intended to cause consequences that the defendant knew would lead to injury, in the forum state.[47]  Accordingly, and of particular importance in this case,

---

[43]*Dudnikov*, 514 F.3d at 1072.

[44]*See La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009).

[45]*Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 299 (3d Cir. 1991); *UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*, 446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006) (citing *Educ. Testing Serv. v. Simon*, 95 F. Supp. 2d 1081, 1078 (C.D. Cal. 1999)); *CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 787 (D. Md. 2000); *see also* William F. Patry, Patry on Copyright § 17:167 (2015) ("The tort of copyright infringement . . . has, from its inception, been regarded as a strict liability tort.").

[46]*See Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 99 (10th Cir. 2012) (noting that the third prong of the effects test is not satisfied merely because the defendant could have *foreseen* that the brunt of the injury caused by the defendant's conduct would have been felt in the forum state).

[47]*See, e.g.*, *Calder*, 465 U.S. at 789–90 (finding the effects test satisfied where the plaintiff alleged libel, invasion of privacy, and intentional infliction of emotional harm); *Dudnikov*, 514 F.3d at 1072–73 (holding the effects test satisfied where the plaintiffs adequately alleged tortious interference with the plaintiffs' business); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) ("[I]t is well established that the

12

several courts and at least one commentator have opined that allegations of copyright infringement cannot satisfy the effects test absent some evidence that the alleged infringement was intentional.[48]

Here, the uncontroverted declarations in Mr. Maltin's affidavit show that MEDL was unaware of Plaintiff's copyrights during the FishID app's development phase.[49]  MEDL's intentional acts in developing and launching the app, therefore, were necessarily taken without knowledge that the brunt of any copyright injury would be felt by Plaintiff in the state of Kansas. Plaintiff argues, however, that his February 2012 cease and desist letter placed MEDL on notice of Plaintiff's copyrights in the FishID app pictures.  He contends that MEDL's continuing to sell the infringing version of the app after receiving the letter constitutes intentional copyright infringement.

The Court agrees that the cease and desist letter placed MEDL on notice that the brunt of the alleged copyright infringement would be felt by Plaintiff in Kansas: the registration certificates attached to the cease and desist letter notified MEDL that Plaintiff was a Kansas

---

*Calder* test applies only to intentional torts, not to the breach of contract and negligence claims presented here."); *Global Ground Support, LLC v. All Test & Inspection, Inc.*, Nos. 07-0491, 06-1481, 2007 WL 2916189, at *4 n.3 (E.D. Pa. Oct. 5, 2007) (reviewing Third Circuit cases and concluding that "since plaintiff does not assert that defendant committed an intentional tort, the effects test is inapplicable here").  Only courts in the Fifth Circuit have held that the effects test may be satisfied where the plaintiff alleges an unintentional tort.  *See Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 629 (5th Cir. 1999).  Notably, *Guidry* found that the third prong of the effects test could be met "even when the defendant did not *intend* to cause the particular effect in the state but could *reasonably have foreseen* it would result," *id.* (emphasis added)—a proposition the Tenth Circuit has rejected.  *Grynberg*, 490 F. App'x at 99.

[48]*See, e.g.*, *Parker v. Dufresne*, No. 09-cv-1859, 2010 WL 2671578, at *9 (W.D. La. May 18, 2010); *CoStar*, 106 F. Supp. 2d at 786–87; *Figi Graphics, Inc. v. Dollar Gen'l Corp.*, 33 F. Supp. 2d 1263, 1267 (S.D. Cal. 1998); William F. Patry, Patry on Copyright § 17:167 (2015).

[49]Doc. 36-1 ¶ 12.

resident,[50] and the letter itself stated that MEDL's continuing to sell the app would result in further violation of Plaintiff's copyrights.  The relevant question under *Calder* thus becomes whether Plaintiff can satisfy the first two prongs of the effects test—that is, whether, after receiving the cease and desist letter, MEDL took (a) an intentional action (b) expressly aimed at Kansas.  The Court assumes for the sake of argument that MEDL's failure to replace the allegedly infringing version of the app and its continuing to offer the app for sale through the iTunes store constitute "intentional act[s]" sufficient to satisfy the test's first prong.  But *Calder*'s second prong—requiring that MEDL "expressly aimed" the intentional act at Kansas—is not met by merely showing that MEDL committed an intentional tort against a person it knew to be a resident of this state.[51]  As the Supreme Court recently held, "the plaintiff cannot be the only link between the defendant and the forum."[52]  The purposeful-direction analysis, in other words, "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[53]

None of MEDL's intentional actions after receiving the cease and desist letter were expressly aimed at the state of Kansas.  MEDL's continuing to sell the FishID app after receiving the letter may have rendered a Kansas resident the victim of an intentional tort, but that act standing alone does not create a jurisdictionally relevant contact between MEDL and the

---

[50]Doc. 36 at 10.

[51]*See Walden v. Fiore*, 134 S. Ct. 1115, 1125–26 (2014) (finding Nevada courts lacked specific jurisdiction over the defendant even though he allegedly committed an intentional tort against a person he knew resided in Nevada).

[52]*Id.* at 1122.

[53]*Id.*

state of Kansas itself.[54]  And the record does not suggest that MEDL took any other intentional action aimed at Kansas after becoming aware of Plaintiff's alleged copyrights.[55]  Plaintiff does not allege, for example, that MEDL sold any copies of the FishID app to Kansas residents.  He does not contend that MEDL advertised the app in Kansas after receiving the cease and desist letter.  Nor is there any indication that MEDL's continuing to offer the app for sale was directed at an audience that would inherently include a substantial number of Kansas residents.[56]  Absent such a showing, Plaintiff has not established that MEDL expressly aimed tortious activity at Kansas with knowledge that the brunt of the injury would be felt in this state.  The Court, therefore, may not exercise specific jurisdiction over MEDL on the basis of the intentional copyright infringement alleged here.

b.  MEDL's Website

Plaintiff next argues that MEDL purposefully directed commercial activity at Kansas residents through its website, which "actively solicit[ed] residents to purchase" the FishID app.[57]  He contends this website meets the test for internet-based purposeful direction announced by the Tenth Circuit in *Shrader v. Biddinger*.[58]

---

[54]*See id.* at 1122, 1125–26.

[55]MEDL's incorporation of the Kansas-specific features into the FishID app occurred before MEDL received the cease and desist letter, and thus before MEDL became aware that the brunt of the alleged copyright injury would be felt by Plaintiff in Kansas.  The Court will consider the jurisdictional impact of the app's state-specific features in subsection c., *infra*.

[56]*See Shrader v. Biddinger*, 633 F.3d 1235, 1245 (10th Cir. 2011) (finding that a defamatory blog post did not support the court's exercise of specific jurisdiction because the post was not "directed at an audience that would inherently have included a substantial number of forum state residents and businesses").

[57]Doc. 42 at 8.

[58]633 F.3d 1235 (10th Cir. 2011).

The *Shrader* court held that a defendant's website cannot subject the defendant to personal jurisdiction simply because residents of the forum state have access to the website.[59]  In the internet context, the court noted, the personal-jurisdiction analysis should "plac[e] emphasis on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there."[60]  The court thus approved the Fourth Circuit's test for internet-based purposeful direction:

> [A] state may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) *directs electronic activity into the State*, (2) *with the manifested intent of engaging in business or other interactions within the State*, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.  Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received.  Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State.[61]

Applying this test to the facts at hand, the Court finds that MEDL did not purposefully direct FishID-related activity at Kansas through operation of its website.  With respect to the first prong, Plaintiff does not specify how MEDL directed electronic activity into Kansas.  MEDL makes no sales through its website.  Plaintiff does not allege that MEDL has ever engaged in communications or other interactions with Kansas users through the website.  And to the extent

---

[59]*Id.* at 1241.

[60]*Id.* at 1240 (emphasis in original).

[61]*Id.* at 1240–41 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)) (emphasis in original).

MEDL, by providing hyperlinks to the stores of third-party app providers, can be deemed to have directed electronic activity into all states from which customers click on those links, Plaintiff does not allege that any customer in Kansas has ever done so.  In fact, Plaintiff does not contend that any Kansas resident has purchased a copy of the FishID app at all.

Perhaps Plaintiff assumes that the mere visibility of MEDL's website in Kansas satisfies *Shrader*'s "direct[ing] electronic activity" requirement.[62]  Such an assumption appears inconsistent with the test's purpose of excluding the operation of passive websites from the scope of purposefully-directed activity.[63]  But even if the Court were to deem *Shrader*'s first prong satisfied based on the website's visibility in this state, the information posted on the website fails to meet *Shrader*'s second prong.  Nothing visible on the website itself manifests an intent to do business in Kansas.  The screenshots Plaintiff submits portraying pages of MEDL's website contain no marketing information directed toward Kansas users in particular.  Further, MEDL's provision of information about its products and where and how to purchase them does not demonstrate an intent to do business in every state where that information is viewable.[64]  Thus, this Court and several others have held that a defendant's posting of a hyperlink to the website of a third party through which users can engage in commercial transactions does not,

---

[62]*See GoFit LLC v. GoFit LLC*, No. 12-CV-622-JED-FHM, 2013 WL 1566908, at *4 (N.D. Okla. 2013) (questioning whether "the mere visibility of [a] website in Oklahoma" is sufficient to satisfy the first prong of the *Shrader* test for internet-based specific jurisdiction).

[63]*See Shrader*, 633 F.3d at 1240–41.

[64]*See Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 297, 301 (S.D.N.Y. 1996) (finding that a jazz club owner did not purposefully direct activities at the state of New York by maintaining a general-access website containing general information about the club, a calendar of events, and ticketing information, including a telephone number for charge-by-phone ticket orders).

without more, suffice to establish purposeful direction on the part of the defendant.[65]

Plaintiff has not shown that MEDL, through its website, has purposefully directed electronic activity into Kansas under the test announced in *Shrader*.  The Court may not exercise specific jurisdiction over MEDL on this basis.

### c.  The FishID App's State-Specific Features

Plaintiff finally argues that MEDL purposefully directed activity at Kansas by incorporating state-specific features into the FishID app.  In particular, Plaintiff alleges that the app displays maps that "tag" lakes and rivers located in Kansas, provides range maps allowing users to identify fish species that can be found in certain bodies of water within Kansas, and links to the fishing regulations of each state, including those of Kansas.[66]  Plaintiff thus contends the design of the FishID app itself manifests MEDL's intent to create and exploit a market for the app within this state, thereby forming a sufficient basis for the Court's exercise of specific jurisdiction over MEDL.

The Court agrees that MEDL's incorporation of Kansas-specific features into the app constitutes activity purposefully directed toward this state.  The Supreme Court has twice explicitly recognized that a product's state-specific design may indicate purposeful direction on the part of the product's maker.[67]  First, in *Asahi*, Justice O'Connor wrote for a plurality of the

---

[65]*See Advisors Excel, LLC v. Senior Advisory Grp.*, LLC, 2011 WL 3489884, at *4, *7 (D. Kan. Aug. 10, 2011) (finding that the defendant's website did not establish purposeful direction by providing hyperlinks through which users could gain instant approval for insurance policies); *see also, e.g.*, *Celorio v. Google Inc.*, 872 F. Supp. 2d 1327, 1333 (N.D. Fla. 2012); *Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1348 (M.D. Fla. 2007).

[66] *See* Doc. 42 at 8; Doc. 42-1 ¶¶ 4–6, 9.

[67]*J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2792 (2011) (Breyer, J., concurring in the judgment); *Asahi Metal Indus. Co., Ltd. v. Superior Court of Calif., Solano Cnty.*, 480 U.S. 102, 112 (1987).

Court that the placement of a product into the "stream of commerce" may constitute purposeful direction where additional conduct "indicate[s] an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State."[68]  Then later, in *J. McIntyre*, Justice Breyer issued an opinion concurring in the judgment which, under the *Marks* doctrine, became the controlling decision of the Court;[69] that opinion observed that "special state-related design" can subject the manufacturer of a product to specific jurisdiction in the forum.[70]  Neither of the products at issue in *Asahi* and *J. McIntyre* were designed for the market in the forum state.[71]  Here, by contrast, MEDL's FishID app contains Kansas-related regulatory and wildlife information that can make the fishing experience more convenient and enjoyable for Kansas users.  Those features evidence MEDL's intent to create demand for the app within Kansas and, thus, to increase sales by serving the market in this state.[72]

MEDL points out that the state-specific features Plaintiff alludes to are available not only for Kansas but also for all other states in the country.  In so doing, MEDL appears to argue that

---

[68]*Asahi*, 480 U.S. at 112.

[69]*See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (internal quotation marks omitted); *UTC Fire & Sec. Americas Corp. v. NCS Power, Inc.*, 844 F. Supp. 2d 366, 376 (S.D.N.Y. 2012) (recognizing Justice Breyer's concurrence in the judgment as the controlling decision in *J. McIntyre* under the *Marks* doctrine).

[70]*J. McIntyre*, 131 S. Ct. at 2792.

[71]*Id.* (concluding the metal-shearing machine at issue involved "no special state-related design"); *Asahi*, 480 U.S. at 112 (finding no evidence the defendant designed its tire valve stems in anticipation of sales in California).

[72]*See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (recognizing that specific jurisdiction "is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts").

because it did not design the app *solely* for use in Kansas, it did not *specifically* target Kansas users.  This argument misunderstands the purposeful-direction analysis.  It is not necessary to a finding of purposeful direction that a defendant be found to have singled out the forum state as its sole focus of commercial activity.[73]  Rather, a defendant may find it beneficial to direct particular business activities at several states, or even at all fifty states, simultaneously; and where defendants have chosen to do so, courts have observed that purposeful direction exists in all states whose markets the defendants have purposefully endeavored to serve.[74]

MEDL nevertheless argues the Tenth Circuit's decision in *Shrader* is to the contrary.  In that case, the court considered whether a user of an online market-trader discussion forum purposefully directed a defamatory post at the state of Oklahoma.[75]  The forum where the defendant published the post had no particular connection with Oklahoma, and nothing about the content of the post or the nature of the plaintiff's work showed any tie to the state.[76]  Instead, the post appeared to be aimed at a worldwide audience of market traders, wherever located.[77] Because of the "geographically-neutral content" of the post and the "geographically-neutral nature of the forum" where it was published, the Tenth Circuit found the defendant did not

---

[73]*See, e.g.*, *Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. of Am. Org., LLC*, 875 F. Supp. 2d 211, 222 (W.D.N.Y. 2012).

[74]*See, e.g., id.*; *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2005); *Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp. 2d 1013, 1022 (N.D. Cal. 2005).

[75]*Shrader v. Biddinger*, 633 F.3d 1235, 1244–46 (10th Cir. 2011).

[76]*Id.* at 1244.

[77]*Id.* at 1246.

purposefully direct his message at Oklahoma.[78]  MEDL contends that the FishID app at issue in this case is likewise "geographically neutral": its state-specific features are available to users in all fifty states.  In MEDL's view, so long as it directs its business activities at all states equally, *Shrader*'s emphasis on geographic neutrality effectively bars the exercise of specific jurisdiction over MEDL in any state in this circuit.

MEDL's incorporation of state-specific features into its FishID app reflects an effort to

The Court reads *Shrader* differently.  The defendant in that case made no effort to transmit or tailor his message to users in any state in particular, and the post had no inherent nexus to any geographic location.  The defendant's actions were "geographically neutral," therefore, in the sense that they reflected no state-specific or geo-specific efforts at all.[79]  In this case, by contrast, MEDL targeted *each* state in particular by designing an app with geographic and regulatory content unique to each state.[80]  Nothing in *Shrader* suggests that such tailored efforts to exploit the individual markets in each state fail the purposeful-direction test simply because they are aimed at each state equally.  As MEDL's design of the FishID app involved state-specific targeting, that activity cannot be considered "geographically neutral" as the Tenth Circuit employed that term in *Shrader*.[81]

MEDL's incorporation of state-specific features into its FishID app reflects an effort to

---

[78]*Id.* at 1245–46.

[79]*See id.*; *see also J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2792 (2011) (Breyer, J., concurring in the judgment) (finding purposeful availment lacking because the British defendant, which permitted its American distributor to sell the defendant's machines "to anyone in America willing to buy them," made "no specific effort . . . to sell in New Jersey").

[80]*Cf. J. McIntyre*, 131 S. Ct. at 2792 ("Here, the relevant facts found by the New Jersey Supreme Court show no . . . 'something more,' such as special state-related design.") (Breyer, J., concurring in the judgment).

[81]*See Shrader*, 633 F.3d at 1244–45.

create demand for the app within the markets of each state, including Kansas.  Thus, the Court

finds that the app's "special state-related design"[82] suffices to satisfy the "purposeful direction"

requirement for the exercise of specific jurisdiction in this state.

2.      Nexus

Having determined that MEDL purposefully directed activities at the state of Kansas, the

Court must now consider whether Plaintiff's alleged injuries "arise out of" MEDL's forum-

related contacts.[83]  Courts have generally followed one of three approaches in analyzing this

"nexus" requirement: (1) proximate causation, (2) but-for causation, or (3) substantial

connection.[84]  The Tenth Circuit has rejected the substantial-connection approach outright.[85]

Between the two causation-based approaches, however, the Tenth Circuit has yet to "pick

sides."[86]  "Under the [but-for causation] approach, any event in the causal chain leading to the

plaintiff's injury is sufficiently related to the claim to support the exercise of specific

jurisdiction.  The [proximate causation] approach, by contrast, is considerably more restrictive

and calls for courts to examin[e] whether any of the defendant's contacts with the forum are

relevant to the merits of the plaintiff's claim."[87]  As explained below, the Court need not decide

here which of these approaches is more appropriate, as Plaintiff has failed to demonstrate the

---

[82]*J. McIntyre*, 131 S. Ct. at 2792.

[83]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008).

[84]*Id.* at 1078–80.

[85]*Id.* at 1078.

[86]*See id.* at 1078–79; *see also Newsome v. Gallacher*, 722 F.3d 1257, 1269–70 (10th Cir. 2013); *Emp'rs. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160–61 (10th Cir. 2010).

[87]*Dudnikov*, 514 F.3d at 1078.

requisite nexus under either approach.

The alleged injuries forming the basis of Plaintiff's claims consist of an unspecified number of incidents of copyright infringement, committed in violation of the Copyright Act, 17 U.S.C. § 101, *et seq.* Under the Copyright Act, copyright infringement occurs when anyone "violates the exclusive rights of the copyright holder,"[88] including the rights to reproduce and distribute copyrighted works.[89] In this case, Plaintiff alleges that MEDL injured him by incorporating his copyrighted illustrations into the FishID app's fish profiles (reproduction) and by selling copies of the app to the public (distribution).

Plaintiff bears the burden of showing that these alleged injuries arise out of MEDL's contacts with the state of Kansas.[90] Despite this burden, however, Plaintiff's briefing fails to address the nexus issue at all. The Court is left to speculate how MEDL's only jurisdictionally-relevant contact with Kansas—its incorporation of state-specific features into the FishID app's design[91]—might have given rise to Plaintiff's cause of action for copyright infringement. On the facts presented in the record, the Court is unable to find the causal connection required.

Under the but-for causation approach, Plaintiff must show that the alleged copyright infringement would not have occurred except for MEDL's incorporation of Kansas-specific features into the FishID app. Plaintiff has not made that showing. First, the app's Kansas-

---

[88] 17 U.S.C. § 501(a).

[89] 17 U.S.C. § 106.

[90] *See Dudnikov*, 514 F.3d at 1069; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Mellon Bank (East) PFSF, Nat'l Assoc. v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

[91] *See* Section III.B.1., *supra.*

specific features—including range maps for various fish species and a link to Kansas fishing regulations—appear wholly unrelated to the reproduction of Plaintiff's fish illustrations in the app's fish species profiles.  Plaintiff does not allege that the app's Kansas content had any role in making it possible for MEDL, quite separately, to copy and display Plaintiff's illustrations within the app.  Instead, every indication is that MEDL is able to reproduce Plaintiff's illustrations without incorporating Kansas-related information into the app at all.  Thus, the record before the Court does not establish that the app's Kansas-specific features are a but-for cause of MEDL's alleged reproduction of the copyrighted illustrations.

Nor does the record suggest that the app's Kansas content has enabled MEDL to distribute Plaintiff's illustrations to the public.  To be sure, the Court can imagine a plausible argument that the app's state-specific and geo-specific features make the app more attractive to potential customers, thereby increasing the app's total sales.  It might be true, then, that the app's state-specific features have indirectly increased MEDL's distribution of the app; and if so, those features are properly viewed as a but-for cause of at least some incidents of the alleged copyright infringement.  For the purpose of establishing personal jurisdiction in this case, however, only MEDL's Kansas-related activities are relevant.  Plaintiff has not shown that *those* activities contributed in any way to the app's distribution: as already noted, Plaintiff has not alleged or presented any evidence that anyone in Kansas has ever used or purchased the FishID app.[92]  The

---

[92]Plaintiff complains that MEDL has not disclosed whether the FishID app has ever been purchased or used by someone in Kansas.  *See* Doc. 42 at 2.  But Plaintiff had the benefit of jurisdictional discovery in this case, *see* Doc. 24, and he did not move to compel additional discovery or otherwise challenge the sufficiency of the discovery he received.  As Plaintiff has the burden of establishing personal jurisdiction, and has had every opportunity to discover information on MEDL's Kansas-related FishID sales, the Court finds it significant that the record lacks any allegation or evidence that such sales have occurred.

record as it stands, therefore, does not suggest that the app's Kansas-specific features have contributed to a single incident of the alleged copyright infringement.

Having failed to demonstrate the requisite nexus under the but-for approach, Plaintiff has necessarily failed to meet the "considerably more restrictive" proximate-cause test. [93]  Indeed, it does not appear that MEDL's incorporation of Kansas-specific features into the FishID app are in any way relevant to the merits of Plaintiff's claims for copyright infringement.[94]  The Court therefore finds that Plaintiff's cause of action does not "arise out of" MEDL's Kansas-related activities.  Because Plaintiff has not met his burden of satisfying the nexus requirement for specific jurisdiction, the Court need not consider whether the exercise of jurisdiction would be unreasonable.  The Court may not exercise specific jurisdiction over MEDL in this case.

## IV.    Transfer

MEDL requests the Court to dismiss this action or, in the alternative, to transfer the action to the United States District Court for the Central District of California under 28 U.S.C. § 1631.[95]  For his part, Plaintiff states that "the Court may transfer venue to the state of California" in the event the Court finds that it lacks personal jurisdiction over MEDL.[96]

Section 1631 provides that when "a court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in

---

[93] *See Dudnikov*, 514 F.3d at 1078.

[94] *See id.* ("The [proximate causation] approach . . . calls for courts to examin[e] whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim.").

[95] Doc. 36 at 13.

[96] Doc. 42 at 9.

which the action . . . could have been brought at the time it was filed."[97]  Despite § 1631's use of the word "shall," the Tenth Circuit has interpreted the phrase "if it is in the interest of justice" to grant the district court discretion in deciding whether transfer is appropriate.[98]  The decision whether to transfer the action or instead to dismiss the action without prejudice is thus ordinarily within the sound discretion of the district court.[99]  Where, however, a suit features multiple defendants residing in different states, "so there [is] no single court to which the action c[an] be transferred with any assurance that jurisdiction [is] proper," there exists a "patent impediment" to transfer.[100]  In those circumstances, the Tenth Circuit has found that the most appropriate course of action is to dismiss the case without prejudice rather than "unilaterally split up [the] action and transfer the resultant components to diverse jurisdictions."[101]

As the Court has noted, MEDL is not the only defendant in this case.  Plaintiff has also named Connecticut resident Jason Siniscalchi as a co-defendant, and Mr. Siniscalchi has separately moved to dismiss on the basis that the Court lacks personal jurisdiction over him.[102]  That motion is not yet fully briefed, so the Court has not considered whether it may exercise jurisdiction over Mr. Siniscalchi.  But because the Court lacks personal jurisdiction over MEDL, and because MEDL and Mr. Siniscalchi are domiciled in different states, the Court cannot be

---

[97] 28 U.S.C. § 1631 (emphasis added).

[98] *Trujillo v. Williams*, 465 F.3d 1210, 1222–23 (10th Cir. 2006).

[99] *Id.*

[100] *Shrader v. Biddinger*, 633 F.3d 1235, 1249 (10th Cir. 2011).

[101] *See id.* at 1249–50.

[102] Doc. 37.

assured that the Central District of California or any other federal district court would have jurisdiction over both parties to this action.  This case thus features a "patent impediment" to transfer.[103]  Further, Plaintiff does not contend, and the record does not indicate, that Plaintiff's claims against MEDL would be time-barred if the action is dismissed without prejudice.[104]  The Court, therefore, finds that Plaintiff's action against MEDL should be dismissed without prejudice rather than transferred.

**IT IS THEREFORE ORDERED** that MEDL's Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 36) is **GRANTED**.

**IT IS SO ORDERED.**

Dated: <u>April 29, 2015</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[103] *See Shrader*, 633 F.3d at 1249.

[104] *Cf. Trujillo*, 465 F.3d at 1223 n.16 (finding that one factor warranting transfer rather than dismissal is a "finding that the new action would be time barred" (citation omitted)).